UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

                                    Chapter 13

ZEL JONES,                              Case No. 8:12-bk-10180-KRM

       Debtor.
_____/

**MEMORANDUM OPINION ON DEBTOR'S MOTION TO
DETERMINE SECURED STATUS OF VENTURA BAY HOMEOWNERS
ASSOCIATION AND TO STRIP LIEN EFFECTIVE UPON DISCHARTGE**

In the present case, the debtor filed a motion to have the court determine the secured status of the lien of Ventura Bay Homeowners' Association (the "HOA"), pursuant to 11 U.S.C. § 506.[1] The Debtor argues that the lien may be removed ("stripped off") pursuant to § 1322(b)(2) of the Bankruptcy Code because the balance due on the Debtor's first mortgage exceeds the value of the Debtor's home and, thus, the HOA lien is wholly unsecured. In contrast, the HOA has presented several arguments as to why it does not believe the lien can be stripped off. After reviewing the record, the relevant case law, and the statutes now at issue, the Court concludes that the lien held by the HOA is an unsecured claim that may be stripped off in accordance with §§ 506(a) and 1322(b)(2).

FACTUAL BACKGROUND

In January, 2008, the Debtor purchased a townhome in the Ventura Bay development located in Riverview, Florida. The purchase was financed by a first mortgage, recorded on May 29, 2008.[2] According to the Debtor's bankruptcy schedules, the current outstanding balance on the bank's mortgage is $158,899.67; but the value of the Debtor's townhome is stated to be only

---

[1] Doc. No. 23.

[2] Doc. No. 37, p. 1.

$96,829.[3]  Under the Debtor's calculations, the first mortgage is undersecured by approximately $62,000.  The HOA does not contest the amount owed on the first mortgage or the value of the Debtor's home.[4]

The Debtor owes approximately $7,162 to the HOA for unpaid association dues and various collections expenses authorized by Florida statute.[5]  The debt owed to the HOA is secured by a lien that was recorded on June 30, 2011.[6]  Therefore, when the Debtor filed her chapter 13 petition, on June 29, 2012, there were two perfected liens on her homestead.  Because the HOA's claim of lien was recorded after the bank's, and because the bank's first mortgage is undersecured, the Debtor now seeks to have the HOA's lien classified as an unsecured claim and remove the lien for the pre-petition debt pursuant to 11 U.S.C. § 506.[7]

The HOA claims that its lien is given special status under Florida law, which prevents the Debtor from employing Section 506 to strip off the lien.  In support of its position, the HOA argues, first, that § 506 does not expressly contemplate, or apply to, homeowners' association liens because the HOA is not a "traditional creditor" and did not have the opportunity to assess the relative credit risk of potential HOA members prior to the purchase of a home.[8]  Alternatively, the HOA argues that even if § 506 applies, it nevertheless possesses a secured claim because Florida law grants its lien a super-priority status over all other liens.[9]  The Court will address both arguments in turn.

---

[3] Doc. No. 1.

[4] Doc. No. 37, p. 1.

[5] Doc. No. 1.

[6] Doc. No. 37, p. 1.

[7] *See Tanner v. FirstPlus Fin., Inc. (In re Tanner)*, 217 F.3d 1357, 1358 (11th Cir. 2000).

[8] Doc. No. 37, pp. 1-3.

[9] *Id.* at 3-8.

CONCLUSIONS OF LAW

Section 1322(b)(2) of the Bankruptcy Code permits a debtor to "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims."[10]  In *Nobelman*, the Supreme Court held that claims covered by the anti-modification provision of § 1322(b)(2) could not be modified if *any* portion of the claim were secured.[11]  However, the Supreme Court left open the issue of whether the anti-modification provision applied to creditors who were subordinated to undersecured senior lienholders.  In *Tanner*, the Eleventh Circuit adopted the majority view that a debtor could strip off the liens of subordinated mortgagees where no value existed in excess of senior liens.[12]

The common articulation of the *Tanner* holding is the hypothetical "one-dollar rule:" the junior mortgagee has a valid claim to even one dollar of the underlying collateral's value, it has a *secured* claim which cannot be modified in a Chapter 13 case.  Conversely, if there is no collateral value at all for the junior lien, the entire claim is unsecured under § 506 and may be modified, or stripped off.

1. Section 506(a) and HOA Liens.

The HOA's first argument is that it would be erroneous to apply § 506 to liens held by homeowners' associations.[13]  The HOA argues that § 506 was created for contractual debts, such as mortgages and home equity lines of credit where a creditor has ample opportunity to examine the credit worthiness of the debtor and/or the value of the pledged collateral.  In contrast, the

---

[10] 11 U.S.C. § 1322(b)(2).

[11] *Nobelman v. Am. Sav. Credit Union*, 508 U.S. 324, 329-30 (1993).

[12] *Tanner*, 217 F.3d at 1358.

[13] Doc. No. 37, pp. 1-3.

3

HOA asserts that it is not in a position to value the collateral or "evaluate the possible risk that the obligation will remain unpaid."[14] As such, the HOA argues that its assessments are "not secured by collateral or the value of the property, but are secured by operation of law" in a manner not "contemplated expressly by the Bankruptcy Code."[15] For the following reasons, the Court rejects this argument.

The HOA has not cited, nor has the Court found, any support for the argument that association liens are not subject to, or otherwise enjoy special treatment under, the Bankruptcy Code. In fact, all of the cases cited by in the HOA's brief would permit the strip off of a subordinated lien for association assessments.[16]

There is no support in the Bankruptcy Code for the HOA's position. There is no exception for statutory liens in § 506. The debt owed to the HOA falls within the broad definition of "claim" in § 101(5). And, the encumbrance against the real estate, however it originated, falls within the Bankruptcy Code's definition of a "lien,"[17] making such claims subject to the literal application of § 506.

There is nothing in the Bankruptcy Code to suggest that association liens are to be treated differently than any other claims when determining their secured status. As another court in this

---

[14] This argument is somewhat misplaced. The HOA's rights are largely predicated on the declaration of covenants. And it is reasonably common practice in Florida for associations to require purchasers to undergo an approval process prior to closing on a home. By using these measures, associations can effectively "evaluate the possible risk" of a purchaser by performing a credit check. Although such arrangements have been challenged, there is no precedent holding them void *per se*. Compare *In re Walker*, 2008 WL 1781181 (Bankr. S.D. Fla. 2008) (approval process was not expressly noted in the declaration of covenants, was too restrictive, and was too ambiguous, constituting an impermissible restraint on alienation), with *Aquarian Foundation, Inc. v. Sholom House, Inc.*, 448 So. 2d 1166, 1169 (Fla. 3rd DCA 1984) (covenant requiring pre-approval of purchasers who could be declined "for any reason" held enforceable where the association was required to buy the unit at fair market value if it declined a purchaser unreasonably). *See also Chianese v. Culley*, 397 F. Supp. 1344 (S.D. Fla. 1975) (covenant restricting sale and purchase of unit subject to association approval held enforceable).

[15] Doc. No. 37, p. 2.

[16] *See Id.*

[17] *See* 11 U.S.C. § 101(37) (a lien means a "charge against or interest in property to secure payment of a debt or performance of an obligation").

4

district has recently pointed out, there are numerous instances where the Bankruptcy Code affords special rights to creditors, including §§ 365 (landlords) and 366 (utilities).[18] And additionally, special priority rights are granted under § 507 for various kinds of debts, including domestic support obligations and the allowed expenses of the trustee.[19] The existence of special treatment as to certain creditors clearly indicates Congress' ability to carve-out preferences where it deems them appropriate. Accordingly, the absence of a carve-out with regard to association liens is conclusive, and the HOA's lien is subject to review under § 506 to determine its secured status.

    2. Priority of HOA Lien.

The current version of Section 720.3085, Florida Statutes, subordinates a homeowners' association lien to a previously recorded first mortgage,[20] the HOA argues that the earlier version of the statute (2007) should apply in this case, due to a provision in the 2008 statute restricting retroactive application.[21] Further, the HOA asserts that because the 2007 version of the statute did not contain the express subordination language, the HOA's lien is granted "super-priority" status over all other liens.[22]

The HOA's interpretation of the 2007 version of the Florida statute is itself erroneous.[23] A close reading of the that version of section 720.3085, however, makes clear that it did not

---

[18] *In re Plummer*, 484 B.R. 882, 889-90 (Bankr. M.D. Fla. 2013).

[19] 11 U.S.C. § 507(a).

[20] Doc. No. 37, pp. 3-8. *See* Fla. Stat. § 720.3085(1) (2008) (while creating a super priority status for association liens as to all other creditors, the statute carves out an exception as applied to first mortgage holders).

[21] *See Id.* ("[t] his subsection does not bestow upon any lien, mortgage, or certified judgment of record on July 1, 2008, including the lien for unpaid assessments created in this section, a priority that, by law, the lien, mortgage, or judgment did not have before July 1, 2008").

[22] Doc. No. 37, pp. 3-8.

[23] The HOA concedes that its lien would be subordinated under either the Declaration of Condominium, or any version of the Florida Statute after 2008. *See Id.*

address the priority of association liens at all, but provided only that: (1) a parcel owner is individually liable for all assessments following his or her acquisition of the property; and (2) a parcel owner is jointly and severally liable for all assessments that were due prior to taking title.[24]

This point is further demonstrated by the staff reports to the subsequent 2008 amendments. Regarding lien priority under the 2007 version of the statute, all three staff reports note that:

> In 2007, the Legislature created s. 720.3085, F.S., to address a number of issues related to unpaid homeowners' association assessments, filing a lien on a parcel for those unpaid assessments, and foreclosing on the parcel.
>
> ***Priority of Association Lien***
>
> Current statutory law does not specifically address the priority of the lien of a homeowners' association as it relates to any other lien. The priority of the lien of a homeowners' association is contingent upon the language of the covenants that create the obligation and the lien. Where the covenants are silent as to the priority, then the association's lien will be as of the date of the filing of a claim of lien. Only where the association documents specifically provide that a claim of lien shall be considered a lien as of the date of the filing of the covenants does that claim take priority over mortgages and other liens filed.
>
> From a practical matter, institutional lenders have long required a clause in homeowners' association documents providing that first mortgage takes priority over the general association lien that is not in the form of a claim of lien. Where an association failed to have that clause in its documents, many lenders would refuse to write mortgages for homes in the neighborhood, which affects marketability. Thus, developers have traditionally included such a clause in association documents.[25]

---

[24] *See* Fla. Stat. § 720.3085 (2007). The fact that subsequent owners were liable for all past due assessments does not, in and of itself, create a lien that dates back to the declaration of covenants.

[25] *See* Fla. S. Cmty. Aff. Comm., SB 1986 (2008) Staff Analysis p. 2 (March 20, 2008), *available at* http://archive.flsenate.gov/data/session/2008/Senate/bills/analysis/pdf/2008s1986.ca.pdf. *See also* Fla. S. Judiciary Comm., SB 1986 (2008) Staff Analysis p. 2 (April 8, 2008); Fla. S. Banking and Ins. Comm., SB 1986 (2008) Staff Analysis p. 2 (April 11, 2008) (*citing Holly Lake Association v. Fed. Nat'l Mortgage Association*, 660 So. 2d 266 (Fla. 1995), and *Association of Poinciana Villages v. Avatar Properties, Inc.*, 724 So. 2d 585 (Fla. 5th DCA 1998)).

address the priority of association liens at all, but provided only that: (1) a parcel owner is individually liable for all assessments following his or her acquisition of the property; and (2) a parcel owner is jointly and severally liable for all assessments that were due prior to taking title.[24]

This point is further demonstrated by the staff reports to the subsequent 2008 amendments. Regarding lien priority under the 2007 version of the statute, all three staff reports note that:

> In 2007, the Legislature created s. 720.3085, F.S., to address a number of issues related to unpaid homeowners' association assessments, filing a lien on a parcel for those unpaid assessments, and foreclosing on the parcel.
>
> ***Priority of Association Lien***
>
> Current statutory law does not specifically address the priority of the lien of a homeowners' association as it relates to any other lien. The priority of the lien of a homeowners' association is contingent upon the language of the covenants that create the obligation and the lien. Where the covenants are silent as to the priority, then the association's lien will be as of the date of the filing of a claim of lien. Only where the association documents specifically provide that a claim of lien shall be considered a lien as of the date of the filing of the covenants does that claim take priority over mortgages and other liens filed.
>
> From a practical matter, institutional lenders have long required a clause in homeowners' association documents providing that first mortgage takes priority over the general association lien that is not in the form of a claim of lien. Where an association failed to have that clause in its documents, many lenders would refuse to write mortgages for homes in the neighborhood, which affects marketability. Thus, developers have traditionally included such a clause in association documents.[25]

---

[24] *See* Fla. Stat. § 720.3085 (2007). The fact that subsequent owners were liable for all past due assessments does not, in and of itself, create a lien that dates back to the declaration of covenants.

[25] *See* Fla. S. Cmty. Aff. Comm., SB 1986 (2008) Staff Analysis p. 2 (March 20, 2008), *available at* http://archive.flsenate.gov/data/session/2008/Senate/bills/analysis/pdf/2008s1986.ca.pdf. *See also* Fla. S. Judiciary Comm., SB 1986 (2008) Staff Analysis p. 2 (April 8, 2008); Fla. S. Banking and Ins. Comm., SB 1986 (2008) Staff Analysis p. 2 (April 11, 2008) (*citing Holly Lake Association v. Fed. Nat'l Mortgage Association*, 660 So. 2d 266 (Fla. 1995), and *Association of Poinciana Villages v. Avatar Properties, Inc.*, 724 So. 2d 585 (Fla. 5th DCA 1998)).

Given the preceding, coupled with a lack of evidence to support a contrary interpretation, the Court concludes that the priority position of an association lien under the 2007 version of the statute, even if applicable, is established at either the date the claim of lien is filed, or as otherwise stated in the declaration of covenants.[26]

In the present case, the HOA's claim of lien was filed years after the recording of the first mortgage. Moreover, the HOA's Declaration expressly subordinates its liens for unpaid assessments to the rights of the first mortgage holder.[27] Accordingly, the HOA's lien is subordinated to the first mortgage under both the declaration, and Florida statute as it existed at any time.

## CONCLUSION

For the reasons stated herein, the HOA's lien for unpaid assessments is a "lien" contemplated by the Bankruptcy Code to which § 506 applies. The lien is also subordinated to the undersecured first mortgage held by U.S. Bank. Accordingly, pursuant to the Eleventh Circuit's decision in *Tanner*, the HOA's lien is an unsecured claim which may be stripped off in accordance with § 1322(b)(2).[28]

---

[26] As noted in the cited staff opinions, the 2008 amendments created a super priority lien for an association against all other secured interests, except the first mortgage holder. The statute effectively represented a balancing of the issues plaguing associations *and* first mortgage holders following the early stages of the housing recession. In the tradeoff, homeowners' associations received a statutory priority status that they previously did not have, but were limited in the amount they could receive from first mortgage holders to the lesser of the past twelve months assessments, or one percent of the original mortgage debt. *Compare* Fla. Stat. § 720.3085 (2007), *with* Fla. Stat. § 720.3085 (2008).

[27] *See* Declaration of Covenants, ¶ 4.10, at Doc. No. 38-3.

[28] 11 U.S.C. § 1332(b)(2). *See also Tanner v. FirstPlus Fin., Inc. (In re Tanner)*, 217 F.3d 1357, 1358 (11th Cir. 2000). This opinion only addresses the HOA's right to payment from the Debtor for past due assessments. Nothing in this opinion shall prevent the HOA from pursuing its statutory remedies against the Debtor for future assessments, or against future owners of the Debtor's home for past due assessments, if such remedies are otherwise available.

The Court will enter a separate order granting the Motion consistent with the terms of this Memorandum Opinion.

**DATED** in Chambers at Tampa, Florida, on March 26, 2013.

*/s/ K. Rodney May*

K. Rodney May
United States Bankruptcy Judge